UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN GABOR and KAY GABOR,<br><br>Plaintiffs,<br><br>v.<br><br>ESTATE OF MIRIAM CARTER DESHLER, LORD & CARTER TRUST & TRUSTEE SERVICES, REBECCA HARRIS, and KRISTIN HUMPHREY,<br><br>Defendants. | NO: 2:18-CV-0312-TOR<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR SUBSTITUTE |

BEFORE THE COURT is Defendants Harris and Humphrey's Motion to Dismiss and/or Substitute Parties (ECF No. 122). The Motion was submitted without a request for oral argument. Plaintiffs oppose the motion. ECF No. 123. The Court – having reviewed the record and completed briefing – is fully informed. For the reasons discussed below, the Motion (ECF No. 122) is **denied**.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR SUBSTITUTE ~ 1

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." "The burden of demonstrating that no claim has been stated is upon the movant." *Glanville v. McDonnell Douglas Corp.*, 845 F.2d 1029 (9th Cir. 1988).

To survive a motion to dismiss for failure to state a claim, the plaintiff need only allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]"the plaintiff cannot rely on "conclusory allegations of law and unwarranted inferences [] to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted). That is, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.

## BACKGROUND

Plaintiffs Kay and John Gabor are residents of Campbell, California. ECF No. 99 at 2, ¶¶ 1-2. The Gabors first met Miriam Carter Deshler, now deceased, in 1989 when Deshler was teaching law classes and giving seminars to the public out

of her office in San Jose, California. ECF No. 99 at 3, ¶ 11. Around this time, Deshler recommended the Gabors put their assets into trust after the Gabors became involved in a dispute with the California State Board of Equalization over the collection of taxes. ECF No. 99 at 3, ¶ 13. "Throughout the 1990s[,] Deshler helped the Gabors establish several different trusts, one for their home, one for their cars, and several others for different types of property." ECF No. 99 at 3, ¶ 13.

Around January of 2000, Deshler established the Blue Mountain Trust.[1] ECF No. 99 at 3, ¶ 15. The Gabors "relied on Deshler for all aspects of trust management, including who should be a trustee." ECF No. 99 at 3, ¶ 15. According to the Gabors, Deshler told Plaintiffs the Blue Mountain Trust is an "irrevocable trust" and that "the trust cannot be broken and that the money is totally safe". ECF No. 99 at 3, ¶ 15. "Deshler named three trustees: (1) Kay Gabor (executive trustee); (2) John Gabor (trustee); and (3) Miriam Carter Deshler (trustee)." ECF No. 99 at 3, ¶ 15. "By 2005, [Plaintiffs] had deposited their entire life savings of approximately $1.3 million[] into the Blue Mountain Trust." ECF No. 99 at 3, ¶ 15.

---

[1] The terms of the trust are provided at ECF No. 83-1.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR SUBSTITUTE ~ 3

"Without the Gabors' knowledge, in 2005, Deshler began opening trusts and moving the [funds in the Blue Mountain Trust] into those trusts. The Gabors' entire life savings would eventually be moved into these trusts without the Gabors' knowledge." ECF No. 99 at 3, ¶ 16. Specifically, among other things, Deshler used the money from the Blue Mountain Trust to make third party loans and purchase properties (which she then transferred into newly created trusts). *See*, *e.g.*, ECF No. 99 at 4-6, ¶¶ 17-18, 29-31. Deshler named herself and, generally, Defendant Rebecca Harris and Kristin Humphrey, as trustees of the newly created trusts. ECF No. 99 at 3-6, ¶¶ 16-32.

According to the Gabors, they "first learned Deshler had been withdrawing the Blue Mountain Trust funds on June 22, 2012" when Deshler and her assistant, Harris, met with the Gabors at their home in Campbell, California. ECF No. 99 at 6-7, ¶ 34. Deshler and Harris provided "a report titled 'Paul Revere Investments June 2012' that showed . . . pictures of a hotel and houses" and "admitted to Kay and John Gabor that Deshler had taken the money from the Blue Mountain Trust Account, without the permission of the Gabors as trustees, and reinvested the money in properties owned by the Paul Revere Financial Trust." ECF No. 99 at 6-7, ¶ 34. Plaintiffs allege "[t]his transfer of funds was done without permission, without a contract, without a trustee meeting, or minute order." ECF No. 99 at 6-7, ¶ 34. "The Gabors noted that their names were nowhere to be found within the

Paul Revere Financial Trust and there was no mention of the original Blue Mountain Trust. Additionally, no addresses for the various properties owned by the Paul Revere Trust were provided." ECF No. 99 at 7, ¶ 35. "[T]he Gabors demanded that the money be returned immediately to the Blue Mountain Trust Account" and "Deshler and Harris told the Gabors that they would get all their money back with interest in 30 years." ECF No. 99 at 7, ¶ 36.

"The following day John Gabor attended the seminar Deshler was giving, and John Gabor pulled Deshler aside and demanded that she return the money to the Blue Mountain Trust. Deshler asked for 5 years to give the money back, saying 'I can get it all back in 5 years.'" ECF No. 99 at 7, ¶ 37. "At this time, the Gabors did not know whether the Paul Revere Investments were appropriate under the terms of the Blue Mountain Trust or lawful, and thus did not know whether Defendants had acted improperly. Plaintiffs had relied on Defendants to protect their assets, and had no expertise in the rules of trust management." ECF No. 99 at 7, ¶ 38.

The Gabors began investigating the Defendants' actions. ECF No. 99 at 7, ¶ 39. Mr. Gabor traveled to Spokane Washington and located and placed liens on properties identified in the Paul Revere Investment booklet. ECF No. 99 at 7, ¶ 39.

> The Gabors also tried to get more information from Deshler and Harris to determine whether their assets had been mishandled. John Gabor had three or four meetings with Deshler and Harris in Spokane, Washington to try to resolve the problems with the trust. However, Defendants were not

forthcoming about the status of Plaintiffs' assets or whether Plaintiffs' funds would be returned to them.

ECF No. 99 at 8, ¶ 40. "The Gabors' investigation revealed that Deshler's opened the trusts to hide the Gabors' money." ECF No. 99 at 8, ¶ 41. During the investigation, the Gabors spoke with the manager of the bank holding the Blue Mountain Trust funds and the manager arranged a meeting with Deshler and Harris. ECF No. 99 at 8, ¶ 42.

> At the meeting, the Gabors asked where all their assets from the Blue Mountain Trust had gone. Deshler and Harris refused to cooperate in returning any assets to the Blue Mountain Trust. Deshler and Harris also refused to provide any information regarding the addresses of the properties that had been purchased with the funds from the Blue Mountain Trust, or any contact information for the individuals who were involved with the stolen financial assets. During this meeting, Deshler admitted she took the money and spent it without the permission of the Gabors as trustees, saying "You will have to put me in federal prison."

ECF No. 99 at 8, ¶ 42.

"On August 2, 2012, Deshler wrote a letter to the Gabors regarding the Gabors' demand that Deshler return their money. The letter notes that Deshler had returned $200,000 so far (which she had), but that she could only pay back $20,000 more at the time, or $4,000 per month as part of a purported payment plan to return the money." ECF No. 99 at 9, ¶ 45.

> Deshler allegedly died on September 30, 2012, 100 days after informing plaintiffs about the theft of trust assets. Deshler was allegedly cremated two (2) days after her death. The Gabors were not informed of Deshler's alleged death until eighteen (18) days after it occurred. Rebecca Harris wrote the

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR SUBSTITUTE ~ 6

Gabors a letter, dated October 24, 2012, addressed generically to "Lord & Carter Client" to inform them of Deshler's alleged death.

ECF No. 99 at 9, ¶ 46.

The Gabors allege that, "[b]ecause Deshler and Harris provided suspect and false information to the Gabors about the properties they had purchased with the funds from the Blue Mountain Trust, the Gabors spent over 18 months, and retained a private investigator, to verify which properties had been purchased, their location, the status of the Deeds of Trust, and the names of the true titled owners of the properties." ECF No. 99 at 9, ¶ 47. The Gabors allege

> Defendants Lord & Carter, Harris and Humphrey continue to perpetuate this continuous fraud on Plaintiffs by continuing to collect and receive rental income from the properties purchased with the assets from the Blue Mountain Trust[;] by concealing and misrepresenting where the Plaintiffs' assets are located, and the identities of the trusts and properties purchased with those assets[; and] by refusing to return Plaintiff's assets appropriated by Defendants from the Blue Mountain Trust.

ECF No. 99 at 1, ¶ 50.

The Gabors filed this suit on March 21, 2017 in the Northern District of California. ECF No. 1. The case was subsequently transferred to this District at the Gabor's request. *See* ECF Nos. 95 at 19-20; 101 at 4. Defendants Harris and Humphrey now request the Court dismiss the Gabor's claims against them and

(presumably) the estate of Deshler[2] or, in the alternative, dismiss the claims brought by Gabor's in their individual capacity. This Motion is before the Court.

## DISCUSSION

Defendants request the Court dismiss the Gabors' Amended Complaint, arguing the Amended Complaint "is fundamentally flawed in that it asserts claims personal to the Gabors, but fails to allege facts that would entitle them to any relief as individual plaintiffs." ECF No. 122 at 6. However, Defendants argument is "fundamentally flawed" in that the entire argument presumes what is at issue: that the money is simply trust money and Gabors only skin in the game is their role as co-trustees of the Blue Mountain Trust. This ignores the big picture: the Gabors relied on Deshler to keep their assets "totally safe" by placing their life savings in a trust; Deshler, who exerted control of the trust, then proceeded to drain the funds and funnel them into other properties held by other trusts.

Defendants repeatedly argue that the Gabors do not allege they are the intended beneficiaries of any of the trusts, but it is clear that the Gabors believed the Blue Mountain Trust was created for their benefit. It is also clear Deshler

---

[2] It is not clear whether the Motion is being brought on behalf of the Estate of Deshler, as Defendants did not state the Motion is brought on the estate's behalf but Defendants raise arguments related to Deshler's potential liability.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR SUBSTITUTE ~ 8

believed the trust money was for the Gabors' benefit, even if not on paper. First, Deshler promised the Gabors that the money was "totally safe."[3] This alone suggests the Gabors and Deshler intended the money to be kept "safe" for the Gabors' use. Second, Deshler repeatedly offered to reimburse the Gabors for the withdrawn funds after the Gabors demanded such.[4] Then, shortly before her alleged death, she told the Gabors they would have to put her in federal prison.

---

[3] Notably, Defendants boldly claim that the Gabors "do not claim that any representations made by Deshler with respect to the handling of Trust assets was false or misleading or that they personally relied on any such representations to their detriment[,]" ECF No. 122 at 7, yet the Gabors are out over one million dollars after giving it to Deshler who told them the money was "totally safe".

[4] After Deshler *and* Harris informed the Gabors about the Paul Revere Investments trust and *some* of the related dealings, the Gabors demanded the return of the money. Instead of refuse the demand on the basis that the funds are trust money, Deshler told the Gabors (1) they would receive $6,500 each month from the Paul Revere Investments, (2) then (later) all of the money with interest over thirty years, (3) then (later) all of the money in five years, and (4) finally (later), after returning 200,000, an offer of $20,000 plus $4,000 per month. ECF No. 99 at 6, ¶¶ 34, 36, 37.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR SUBSTITUTE ~ 9

Needless to say, Deshler's conduct is not consistent with Defendants' presumption that the Gabors are not intended beneficiaries of the various trusts—holding otherwise would require the Court to put on blinders and disregard the underlying allegations of fraud permeating throughout the entire transaction.

Harris and Humphrey also argue they have no duties to the Gabors in their capacity as trustees of the other related trusts. However, Deshler and Harris presented the Paul Revere Investment booklet to the Gabors in 2012, which included pictures of properties purchased with Blue Mountain Trust funds and held by the other trusts. This strongly suggests the trusts (for which Harris and Humphrey are trustees) were created for the benefit of the Gabors (or were at least represented as such). Given the representation and the source of the funds, it is plausible Defendants Harris and Humphrey did and still do owe some professional duty to the Gabors in their role as trustees of the various trusts.

Defendants argue the claim of fraud, even if valid against Deshler, "cannot be maintained against defendants Harris and Humphrey" because "[t]he Gabors allege no conduct on the part of Harris or Humphrey connected to the creation of the Blue Mountain Trust or the Gabors' decision to fund the Trust." ECF No. 122 at 11. However, given the nature of the potential scheme that appears to involve Deshler, Harris, and Humphrey, it is premature to decide that issue, especially given the close relationship between the Defendants and the fact that Harris

accompanied Deshler in presenting the Paul Revere Investment booklet to the Gabors in 2012. Moreover, Defendants did not address the Gabors' allegations that Defendants engaged in an ongoing fraud. *See* ECF Nos. 99 at 1, ¶ 50; 122 at 11. It is the Defendants burden to demonstrate dismissal is proper on a motion to dismiss and they have not met this burden.

Harris and Humphrey also argue the Gabors claim for unjust enrichment fails because the Gabors do not allege Harris and Humphrey personally benefit in any way from the collection of rental income or that they have converted any rents to their personal use, ECF No. 122 at 11, but this again assumes the Court will simply ignore the larger claim of fraud. Defendants also spill much ink pointing out what the Gabors have not specifically asked for in their request for relief. However, the Gabors requested any further relief the Court deems just, which may include piercing the veil Deshler attempted to create – and Harris and Humphrey continue to rely on – with these trusts.

Defendants did not raise any other issues. Defendants have thus not met their burden in demonstrating any of the Gabors' claims should be dismissed.

//

//

//

//

**ACCORDINGLY, IT IS ORDERED:**

Defendants Harris and Humphrey's Motion to Dismiss and/or Substitute Parties (ECF No. 122) is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

DATED March 8, 2019.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR SUBSTITUTE ~ 12